■ In the Matter of EBA REALTY Co., Petitioner, v ANN M. GALANTE, as Mayor of the Village of Mineola, et al., Respondents.—Proceeding pursuant to CPLR article 78 to review a determination of the respondents dated April 25, 1988, which, after a hearing, denied the petitioner's application for a special exception permit to maintain a parking lot in a residentially zoned district.

Adjudged that the determination is confirmed and the proceeding is dismissed on the merits, with costs.

We note that the Supreme Court, Nassau County, should have disposed of this case on the merits rather than transferring it here *(see,* Village Law § 7-712 [3]). However, in the interest of judicial economy, this court will decide the case on the merits *(see, Matter of Pacheco v De Salvo,* 127 AD2d 597; *Matter of Aversano v Two Family Use Bd.,* 117 AD2d 665; *Matter of De Blois v Wallace,* 88 AD2d 1073; *Matter of Petrocci v Zoning Bd. of Appeals,* 42 AD2d 676).

The petitioner EBA Realty Company is the owner of a rectangular-shaped parcel of land which is situated on the northwest corner of Jericho Turnpike and Andrews Road in the Village of Mineola. The premises, which has a total plot area of 17,500 square feet, is located within two different zoning districts: the southern portion of the premises, which

extends 100 feet northward from Jericho Turnpike, is within a business zoning district designated as "B-1" and the remaining northern 75 feet of the premises is within a residential zoning district designated as "R-2". A retail store known as Tobacco Junction and four off-street parking stalls are located on that portion of the premises which is situated within the B-1 zoning district.

On January 12, 1987, the petitioner submitted an application to the Village Building Inspector for a building permit to construct two additional retail stores and a storage area for the existing retail store on the premises. The application also proposed that the portion of the premises located within the R-2 district be used for a parking facility that would serve the retail stores in the B-1 district.

On February 18, 1987, the Building Department sent the petitioner a notice of disapproval stating that consent to maintain parking in a residential district may be granted by the Board of Trustees only after a public hearing.

On April 10, 1987, the petitioner in the person of its general partner, Elliot Fleishhacker, submitted an application to the respondents for a special use permit to provide off-street parking stalls in the R-2 zoning district. Public hearings on the petitioner's application were conducted on September 23, 1987, and February 10, 1988. At both hearings, numerous community residents opposed the petitioner's proposals, claiming that its implementation would aggravate already existing traffic problems and consequently result in an increase in the number of motor vehicle accidents in the area adjacent to the premises.

At the second hearing, the petitioner's expert witness, a traffic engineer, conceded that if two retail stores were added to the site, the number of vehicles entering and exiting the premises during the peak afternoon travel hours of 4:00 P.M. to 6:00 P.M. would increase by approximately 250%.

By a decision dated April 25, 1988, the respondents denied the petitioner's application stating, *inter alia,* that implementation of the proposal represented an overintensification of land use in the village and would result in a hazardous condition by reason of excessive traffic. The respondents further stated that the residential portion of the land could be alternatively used for the development of a residential use.

The petitioner subsequently commenced this proceeding contending that the respondents applied the wrong standard in determining that its application should be denied because

two of the grounds upon which they based their decision were not included in section 60-96 of the Village of Mineola Zoning Ordinance (hereinafter the ordinance), which sets forth the standard for approving a special or conditional use. The petitioner's argument that the respondents are limited in their discretion by the standard set forth in ordinance § 60-96 is without merit. To the contrary, section 60-56 of the ordinance, which specifically governs the issuance of parking permits, provides that the Board of Trustees may in the reasonable exercise of its discretion grant or refuse to grant an application for a parking permit.

Furthermore, where, as here, the legislative body that enacted the ordinance reserved to itself the dispensing power to grant a permit for a particular purpose, that body is not precluded from considering factors other than those set forth in the ordinance on any specific application for a permit if the express standards do not purport to be exclusive. Where the legislative body has not precluded itself from considering factors not expressly set forth in the ordinance, the question of whether it should issue a permit is left to its untrammelled discretion so long as the discretion is not exercised capriciously (see, Matter of Turgeon v Buffalo Common Council, 78 AD2d 774). In the instant proceeding, section 60-96 of the ordinance does not purport to set standards which are exclusive and thus does not preclude the consideration of additional relevant standards.

The petitioner further maintains that the respondents' determination was, in any event, unsupported by the record. We disagree. The determination was clearly supported by substantial evidence presented at the hearing, including the testimony of the petitioner's own expert witness that implementation of the plan would result in a 250% increase in the number of vehicles entering and exiting the premises and traveling through the adjacent residential area during the peak travel hours of 4:00 P.M. to 6:00 P.M. In view of the foregoing, we conclude that the respondents' determination to deny the petitioner's application was neither arbitrary nor capricious and should not be disturbed (see, Matter of Buitenkant v Robohm, 122 AD2d 791). Bracken, J. P., Rubin, Spatt and Sullivan, JJ., concur.